# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Richard J. Hyde, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 347-994-5423, the ("TARGET CELL PHONE"), subscribed an unknown user with an unknown address, and whose service provider is T-Mobile US, Inc. ("The PROVIDER"), a wireless telephone service located at 4 Sylvan Way, Parsippany, New Jersey 07054. The TARGET CELL PHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.  I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law

1

enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure

4. I am Detective with the New York City Police Department ("NYPD") where I have worked for approximately thirty years and a Task Force Officer presently assigned to the Drug Enforcement Administration Strike Force. In the course of conducting illicit substance and narcotics investigations, I have participated in debriefing of narcotics and controlled substance dealers and/or targets of these investigations regarding their method and practices. I have also participated in the execution of numerous search warrants and multiple investigations involving electronic surveillance. Additionally, I have monitored and/or reviewed audio and video recordings of controlled purchases between informants and traffickers and have monitored hours of intercepted communications related to narcotics and illicit substances distribution. I have attended training courses by Homeland Security, the Drug Enforcement Agency, and other law enforcement agencies on topics covering undercover police tactics, identification of illicit substances, search warrant tactics, physical and electronic surveillance techniques, and interview and interrogation techniques. My formal training has also dealt with the laws of conspiracy, electronic eavesdropping, and search and seizure as they pertain to investigations into the distribution of illicit substances, and with the function, structure, terminology, and *modus operandi* of illicit substance/narcotics operations. I have also been declared an expert witness in Narcotics, in Federal court and NY State court.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to establish probable cause for the requested warrant and does not set forth all of my knowledge about this matter. All times herein are approximate.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that Danaury ESPINAL-LARA a/k/a Jhon Alberio Parada-Ramirez has violated 21 U.S.C. §§ 841(a) and 846 - Conspiracy to Distribute a Controlled Substance. On March 8, 2021, a federal grand jury returned an indictment against ESPINAL-LARA for Conspiracy to Distribute a Controlled Substance and an arrest warrant issued on the same day. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting ESPINAL-LARA, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4). The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *see* 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

7. In the summer of 2019, the DEA began an investigation into a Lawrence, Massachusetts based fentanyl dealer. The investigation eventually expanded to identify an international drug trafficking conspiracy importing fentanyl in Lawrence for further distribution throughout New England. On March 8, 2021, a grand jury in the District of New Hampshire indicted 14 individuals on one count of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance in violation of §§ 841(a) and 846. *See United States v. Delacruz-Diaz et al.*, 21-cr-35-SM, ECF No. 1. Among those named in the indictment was Danaury ESPINAL-LARA a/k/a Jhon Albeiro Parada-Ramirez. An arrest warrant issued on the same day. To date, 11 of the named defendants have had their charges adjudicated. ESPINAL-LARA has remained at large.

8. During the investigation, agents identified ESPINAL-LARA as an international source of fentanyl coordinating with defendants in New England to arrange the shipment, delivery and payment of controlled substances. Agents determined during the investigation that ESPINAL-LARA was using a fraudulent Colombian passport in the name of Jhon Albeiro Parada-Ramirez.

9. The New York division of the DEA has been working with confidential source (CS-1) to investigate narcotics trafficking.[1] CS-1 recently received information that there was an individual in Brooklyn named "Johnny" looking to purchase kilogram quantities of fentanyl. CS-1 was provided with a phone number and a photograph of "Johnny." The phone number that CS-1 received was 929-543-8898. CS-1 communicated with the target at the phone number 929-543-8898. Agents obtained subscriber information related to this phone number and determined that it was a T-Mobile number but that there was no subscriber name or address associated with the number.

10. Through CS-1's communication with the target, agents learned that the target's name was Jhon Ramirez. As part of a deconfliction process, the New York DEA agents discovered that Jhon Albeiro Parada-Ramirez is a wanted fugitive out of New Hampshire. DEA agents from New York sent a photograph that CS-1 had received to New Hampshire DEA agents who confirmed that this individual was in fact ESPINAL-LARA a/k/a Parada-Ramirez. New Hampshire agents then sent numerous photographs to New York, who shared these with CS-1.

---

[1] CS-1 began working with law enforcement for consideration in a pending criminal matter. CS-1 has been working with law enforcement for more than a decade and has provided information that has lead to more than 50 arrests. I believe the information CS-1 has provided to law enforcement is truthful and reliable as CS-1's information has been corroborated to the extent possible by audio and video recordings, surveillance, and the fact that the information has lead to the arrest of dozens of criminals.

CS-1 confirmed that these New Hampshire provided photographs depicted the same person he/she was communicating with.

11.     On March 15, 2024, CS-1 called ESPINAL-LARA and stated that he/she was located in West Virginia, approximately 4 hours away and would like to know some details before making a trip to meet with ESPINAL-LARA.  ESPINAL-LARA told CS-1 that he was only interested in fentanyl.  The two discussed getting a kilogram of fentanyl for $23,000.  ESPINAL-LARA told CS-1 that he could meet in Brooklyn, New York to do the deal, but would let the CS know when he could meet because he required some coordinately on his end.

12.     Agents obtained a ping warrant for ESPINAL-LARA's 8898 number, however, by the time the ping was active, ESPINAL-LARA dropped the 8898 number and obtained a new phone number.  Through some effort, CS-1 was able to obtain ESPINAL-LARA's new phone number, which is 347-994-5423.  The service provider or this number is T-Mobile.  The subscriber is {}

13.     On April 27, 2024, at 4:09 p.m., CS-1 conducted a controlled phone call with ESPINAL-LARA.  CS-1 called ESPINAL-LARA and recognized his voice as the same person that he was in conversation with on cellular telephone number 929-543-8898 on March 15, 2024.  Your affiant has reviewed recorded phone calls from both March 15, 2024, and April 27, 2024, and has concluded that the same voice from the 8898 call was on the 5423 call.

14.     On the call, CS-1 informed ESPINAL-LARA that it would be back in New York by the end of the following week.  ESPINAL-LARA told CS-1 that he obtained one kilogram of fentanyl the previous week for $23,000 and that the drug was "one-hundred percent good."  ESPINAL-LARA told CS-1 that he was only able to get one kilogram per month.  CS-1 told ESPINAL-LARA that it would talk to its people and would be able to provide a kilogram of

5

fentanyl to ESPINAL-LARA for $21,000. ESPINAL-LARA told CS-1 that he would purchase the kilogram for $21,000. CS-1 told ESPINAL-LARA to keep his phone on him and CS-1 would be in touch.

15. For the reasons listed above, there is probable cause to believe that ESPINAL-LARA is using the TARGET CELL PHONE and evidence of the TARGET CELL PHONE'S location will likely lead to ESPINAL-LARA's arrest on his active arrest warrant. I know that cell phones are typically carried on the user's person. Because there is an active arrest warrant for ESPINAL-LARA, and investigators cannot identify his specific location to execute the warrant, I believe that the requested information associated with the TARGET CELL PHONE will greatly assist the DEA and the United States Marshal Service ("USMS") in effecting his arrest. Prospective GPS "pings" will assist the DEA and USMS by providing real-time location updates for the TARGET CELL PHONE, which will assist in locating ESPINAL-LARA. As soon as ESPINAL-LARA has been located and arrested, the DEA and USMS will immediately discontinue the use of the requested information on the TARGET CELL PHONE.

16. In my training and experience, I have learned that PROVIDER is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (*i.e.*, antenna towers

covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

17. Based on my training and experience, I know that PROVIDER can collect E-911 Phase II data about the location of the TARGET CELL PHONE, including by initiating a signal to determine the location of the TARGET CELL PHONE on PROVIDER's network or with such other reference points as may be reasonably available.

18. Based on my training and experience, I know that PROVIDER can collect cell-site data about the TARGET CELL PHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

20.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

21.     I further request that the Court direct PROVIDER to disclose to the government any information described in Attachment B that is within the possession, custody, or control of PROVIDER.  I also request that the Court direct PROVIDER to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with PROVIDER's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on PROVIDER's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The

government shall reasonably compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELL PHONE outside of daytime hours.

Respectfully submitted,

/s/ Richard J. Hyde
TFO Richard J. Hyde
Drug Enforcement Administration

Subscribed and sworn to before me telephonically on **May 7, 2024**, 2024

_____
UNITED STATES MAGISTRATE JUDGE
**Talesha L. Saint-Marc**

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 347-994-5423, **(**the "TARGET CELL PHONE"), subscribed an unknown person with an unknown address and whose wireless service provider is T-Mobile US, Inc. (the "PROVIDER"), a company located at 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Records and information associated with the TARGET CELL PHONE that is within the possession, custody, or control of PROVIDER including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

All information about the location of the TARGET CELL PHONE described in Attachment A for a period of thirty (30) days, during all times of day and night. "Information about the location of the TARGET CELL PHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of PROVIDER, PROVIDER is required to disclose the Location Information to the government. In addition, PROVIDER must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with PROVIDER's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on PROVIDER's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II. Information to Be Seized by the Government**

All information described above in Section I that will assist in arresting **ESPINAL-LARA,** who was indicted for violating 21 U.S.C. §§ 841(a)(1) and 846 – Conspiracy to Distribute and Possess With Intent to Distribute a Controlled Substance on March 8, 2021, is the subject of an arrest warrant issued on March 8, 2021, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the PROVIDER in order to locate the things particularly described in this Warrant.